IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) ) | Case No. 16-11230 |
| PostRock Energy Corporation, *et al.*[1] | ) ) | Chapter 11 |
| Debtors. | ) ) ) | (Joint Administration Requested) |

## AGREED INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING PARTIAL ADEQUATE PROTECTION

**THIS MATTER** comes before the Court upon the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Use Cash Collateral and Granting Adequate Protection* [Docket # _ in Case No. 16-_____ and Docket # _ in Case No. 16-_____] (the "Motion") filed on March __, 2016 by PostRock Energy Services Corporation ("PostRock Energy") and PostRock

---

[1] The Debtors in these chapter 11 cases include: PostRock Energy Corporation, PostRock Energy Services Corporation, PostRock Holdco, LLC, PostRock Eastern Production, LLC, PostRock MidContinent Production, LLC, and STP Newco, Inc.

---

**AGREED INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL**
**AND GRANTING PARTIAL ADEQUATE PROTECTION**                                              **PAGE 1 OF 14**

Midcontinent Production, LLC ("PostRock Midcontinent," and, together with PostRock Energy, collectively, the "Debtors").  Based upon (i) the Motion, (ii) the Debtors' and Citibank's (as hereinafter defined) stipulation and agreement upon the terms of the use of Cash Collateral (as hereinafter defined), as set forth herein below, and (iii) the evidence presented or proffered at the interim hearing held on March __. 2016 (the "Interim Hearing"), the Court hereby approves and adopts said stipulations and agreements as findings of fact and conclusions of law, and finds as follows:

   A.  This Court has jurisdiction over this proceeding, the parties, and the property of the Debtors' bankruptcy estates pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

   B.  Under the circumstances, sufficient and adequate notice of the Motion and the Interim Hearing has been provided to all creditors and other parties in interest entitled to such notice pursuant to the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and the Local Rules of this Court (the "Local Rules"), and as required by the Bankruptcy Code (as hereinafter defined).

   C.  On March __, 2016 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The bankruptcy estates created by the commencement of the above-styled and numbered bankruptcy cases (collectively, the "Cases") are referred to herein collectively as the "Estates."

   D.  Contemporaneously with the filing of these cases, Citibank filed the *Agreed Motion for the Appointment of a Chapter 11 Trustee* [Docket No. _] (the "Trustee Motion").

Pursuant to the Trustee Motion, Citibank requested the appointment of a chapter 11 trustee in these Cases. The Debtor agreed to the relief requested in the Trustee Motion. On March __, 2016, this Court entered an order granting the Trustee Motion and appointing a chapter 11 trustee (the "Trustee") in these Cases [Docket No. __] (the "Trustee Order").

E. An immediate and critical need exists for the Trustee to use cash in order to continue the operation and management of the Estates' businesses and assets. Without the use of such cash, the Trustee will not be able to pay post-petition direct operating expenses and obtain goods and services needed to carry on the Estates' businesses in a manner that will avoid irreparable harm to the Estates. The ability of the Trustee to use cash collateral is necessary to preserve and maintain the going concern value of these Estates.

F. The Debtors and Citibank are parties to, among other agreements, that certain Third Amended and Restated Credit Agreement dated as of December 20, 2012 (as has been or may be further amended, supplemented or restated from time to time, the "Credit Agreement") among PostRock Energy and PostRock Midcontinent, as borrowers, PostRock Energy Corporation, STP Newco, Inc., PostRock Eastern Production, LLC, and PostRock Holdco, LLC, as guarantors (collectively, the "Guarantors"), Citibank, N.A., as administrative agent and collateral agent ("Citibank"), and the other lenders party thereto (collectively, the "Lenders"), providing for a $200,000,000.00 revolving borrowing base loan to the Debtors (the "Loan"). The notes, loan agreements, security agreements, deeds of trust, and related agreements and documents evidencing the Loan, together with any amendments and restatements thereto, are collectively referred to herein as the "Loan Documents."

G. Citibank asserts that:

    *1.* Citibank, as agent for the Lenders, holds valid, perfected, secured claims, as defined in section 101 of the Bankruptcy Code, against these Estates

        (the "Loan Claims"), which it asserts are secured by first-priority valid and perfected liens[2] on, *inter alia*, all of the Estates' and/or Trustee's right, title, present and future interest in the Collateral (defined below). A minimum aggregate amount of approximately $__ million[3] is owed on the Loan Claims as of the Petition Date.

    2.    The Loan Claims are secured by, *inter alia*, liens and security interests encumbering substantially all of the Estates' property and assets (collectively, the "Property"). The Property, together with all other assets, property or collateral pledged to secure the Loan is collectively referred to herein as, the "Collateral."

    3.    The Loan Documents are genuine, valid, existing and legally enforceable subject to the terms thereof.

H.    Citibank asserts that all cash and cash equivalents of the Estates, whether in the form of cash, negotiable instruments, documents of title, securities, deposit accounts, tariffs, governmental refunds, or in any other form which represents income, proceeds, products, rents, or profits of the Collateral, wherever located, that are now in the possession, custody, or control of the Estates and/or the Trustee, or in which the Estates and/or the Trustee will obtain an interest during the pendency of these Cases, constitutes the Cash Collateral (as defined in sections 363(a) and/or 552 of the Bankruptcy Code) of Citibank (collectively, the "Cash Collateral").

I.    Citibank has agreed to the Trustee's use of Cash Collateral to pay the ordinary and necessary operating expenses of the Estates' businesses and assets, for the period (the "Interim Period") from the Petition Date through and including April __, 2016 (the "Maturity Date"), pursuant to and in strict accordance with the terms of this Order. Citibank does not consent to the Trustee's use of Cash Collateral except in strict accordance with the terms and conditions set forth in this Order.

---

[2] Subject only to any statutory liens for unpaid *ad valorem* taxes.

[3] The full aggregate amount of the pre-petition Loan Claims has not yet been confirmed. Accordingly, Citibank reserves all rights regarding the amount of the Loan Claims.

J.      Good cause has been shown for the entry of this Order.  The Court concludes that entry of this Order is in the best interest of the Estates and their creditors as its implementation will, *inter alia*, allow for the continued operation and preservation of the going concern value of the Estates' businesses and assets.

Based upon the above findings, the Court, hereby **ORDERS** as follows:

1.      **Interim Order.**  The Motion is granted on an interim basis as set forth herein.  This Order shall be considered an interim cash collateral order, and shall be binding upon all parties and upon all subsequently appointed court officers, including the Trustee and any subsequently appointed trustee(s) under chapter 11 or chapter 7 of the Bankruptcy Code.  The relief granted in this Order is expressly conditioned upon the appointment of the Trustee in these Cases.

2.      **Good Cause.**  Good cause has been shown for the entry of this Order.  The entry of this Order is in the best interests of the Estates and their creditors.  The terms and conditions of the use of Cash Collateral and the security interests, liens, rights, and priorities granted to Citibank hereunder are fair and appropriate under the circumstances.

3.      **DIP Account.**  The Trustee shall maintain a debtor-in-possession account at [BBVA Compass Bank], which shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Estates' businesses (the "DIP Account").  All cash generated from the Estates' businesses or assets, including any cash held in any of the Estates' pre-petition bank accounts, shall immediately be placed and held in the DIP Account.

4.      The Trustee shall account to Citibank for all Cash Collateral: (i) the Estates now possess; (ii) that has been transferred into the possession of others, if any, since the Petition Date;

(iii) being held by any party in privity with the Estates and/or the Trustee; or (iv) that the Trustee might hereafter obtain. Unless already completed, on or before April __, 2016, the Trustee shall account to Citibank for the receipt and use, if any, of all Cash Collateral received by the Estates and/or Trustee since the Petition Date.

5. **Terms of Cash Collateral Use.** The Trustee is hereby authorized to use up to an aggregate maximum amount of [$_____] the Cash Collateral during the Interim Period, strictly in accordance with the terms of this Order. Within ten (10) days of the entry of this Order, the Trustee shall submit a Cash Collateral budget for approval by Citibank in its sole discretion (the "Budget"). From and after approval of the Budget, the Trustee shall not incur expenses for any line item in the Budget in an amount that exceeds the budgeted amount for such line item by more than 10% without the prior written approval of Citibank. Additionally, the Trustee shall not exceed the aggregate amount of all the line items in the Budget by more than 5% without the prior written approval of Citibank.

6. The Trustee is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Trustee to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Trustee is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same into the DIP Account.

7. The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to permit Citibank to retrieve, collect, and apply payments and

proceeds[4] with respect to the Collateral and Cash Collateral in accordance with the terms and provisions of this Order.

8. **Application of Cash**: In the event the Estates possess and have valid ownership interests in any unencumbered cash during the pendency of these Cases that is not Citibank's Cash Collateral, such cash shall be used (or deemed to have been used) by the Estates and/or Trustee prior to the use of any Cash Collateral.

9. No Cash Collateral, Collateral, or the proceeds thereof, shall be used for the purpose of:

- *(a)* objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the Loan Claims or any liens or security interests securing the Loan Claims;

- *(b)* prosecuting or asserting any claims or causes of action against Citibank or the Lenders, including, without limitation, any actions under chapter 5 of the Bankruptcy Code;

- *(c)* preventing, hindering, or delaying Citibank's enforcement of remedies and collection rights against and upon any of the Collateral, except motions to lift the stay; or

- *(d)* modifying Citibank's rights under the Loan Documents, except that nothing herein shall be construed to limit the Trustee's right to propose a plan of reorganization which seeks to modify such rights as permissible under the provisions of the Bankruptcy Code.

10. **Adequate Protection – Replacement Liens.** As partial adequate protection for the Estates' and/or Trustee's use of Cash Collateral, Citibank is hereby granted, effective as of the Petition Date, valid, binding, enforceable, and automatically perfected liens (the "Replacement Liens") co-extensive with Citibank's pre-petition liens, in all currently owned or hereafter acquired property and assets of the Estates, of any kind or nature, whether real or

---

[4] For purposes of this Order, "proceeds" of any of the Collateral shall mean Proceeds, as defined in the Uniform Commercial Code, of such collateral.

personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds and products thereof, including, without limitation, all cash, goods, accounts receivable, general intangibles, and deposit accounts, which are related to the Collateral, excluding only causes of action arising under chapter 5 of the Bankruptcy Code. This additional adequate protection is being given to the extent of any decrease in value of the Collateral or Cash Collateral. The Replacement Liens granted pursuant to this Order shall have the same priority as Citibank's pre-petition liens.

11. To the extent that 11 U.S.C. § 362 or any other applicable law would restrict the granting, scope, enforceability, attachment, or perfection of the liens and security interests authorized or created in this Order, or otherwise would impose filing or registration requirements with respect to such Replacement Liens, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, other applicable federal law, and the judicial power of the United States Bankruptcy Court. The liens and interests granted to Citibank by and through this Order do not require filing, recording, or perfecting and shall be binding and fully enforceable by the entry of this Order; however, the Trustee shall execute any additional instruments required by Citibank to evidence the post-petition liens and security interests granted herein.

12. **Adequate Protection – Super-Priority Administrative Claim.** As partial adequate protection for the Estates' and/or Trustee's use of the Collateral and Cash Collateral, Citibank is hereby granted an allowed super-priority administrative claim under section 507(b) of the Bankruptcy Code, with priority in payment over any and all administrative expenses arising under sections 503(b) and/or 507(a) of the Bankruptcy Code, to the extent that all other adequate protection provided by this Order fails. Notwithstanding anything to the contrary herein, while the Replacement Liens and other partial adequate protection provided herein shall not extend to

chapter 5 causes of action, the proceeds thereof may be subject to Citibank's section 507(b) claim, if any, under applicable law.

13. **No Subordination of Liens:** The liens and interests granted to Citibank by and through this Order shall not be subject nor subordinate to professional fees and expenses of the attorneys, financial advisors and other professionals retained by the Trustee – whether or not such fees and expenses are set forth in the Budget, approved by the Court and/or consented to by Citibank.

14. **Carve Out.** Notwithstanding any other provision of this order, (1) the funds held in the trust account of Crowe & Dunlevy shall be fully available for the payment of allowed fees and expenses of such firm; (2) Any fees due to the United States Trustee may be paid as and when due from cash on hand; (3) CitiBank agrees it will negotiate in good faith with the Trustee for a further order allowing the use of Cash Collateral to fund such operations of the Debtor's business as the Trustee may determine as well as the allowed fees and expenses of the Trustee and any professionals as the Trustee may employ.

15. **Reporting and Accounting Requirement.** The Trustee shall serve on Citibank's counsel any reports required by the United States Trustee, including all monthly operating reports for the prior month's operations. Additionally, from and after approval of the Budget, every Tuesday on a weekly basis the Trustee shall serve on Citibank's counsel and counsel for the United States Trustee a report that reconciles the weekly projected income and budgeted expenses against the actual receipts and disbursements for the prior week set forth in the Budget.

16. **Access to Information.** At a mutually agreeable time not later than three (3) days after Citibank requests, the Trustee shall permit representatives, advisors, appraisers, agents, and/or employees of Citibank to visit, inspect, have reasonable access to and consult with, as the

case may be: (a) the Estates' books and records; (b) the Estates' personnel and/or agents who are familiar with the Estates' books and records or the information set forth therein; (c) the Collateral; and (d) such other information as Citibank may reasonably request.  The Trustee and his/her representatives, agents, and/or employees shall cooperate and consult with, and provide to such representatives, agents, advisors, appraisers and/or employees of Citibank, all such information as Citibank may reasonably request.

17. **No Surcharge.**  Nothing contained in this Order shall be deemed to be a consent by Citibank to any charge, lien, assessment, or claim against its collateral under 11 U.S.C. § 506(c), or otherwise, and shall be without prejudice to any and all of Citibank's rights under the Loan Documents, the Bankruptcy Code, and other applicable law.

18. **Insurance.**  The Trustee shall maintain adequate insurance on the Collateral.

19. **Termination and Defaults Under the Order.**  Unless specifically waived in writing by Citibank (which waiver shall not be implied from any action, inaction, course of conduct or acquiescence by Citibank), the Trustee's right and authority to use Cash Collateral shall immediately terminate upon the occurrence of any of the following (each, an "Event of Default"):

   a.  Three (3) calendar days following Citibank's delivery of a notice (either written or *via* e-mail to the Trustee) of a breach by the Trustee of any obligations under this Order, which breach remains uncured at the end of such three (3) day notice period – Citibank shall provide counsel for the U.S. Trustee and counsel for any Creditors' Committee (should one be appointed) a courtesy copy of any notice of breach provided hereunder;

   b.  Conversion of either of these Cases to a case under chapter 7 of the Bankruptcy Code;

   d.  The entry of any order modifying, reversing, revoking, staying, rescinding, vacating or amending this Order or the Trustee Order without the express prior written consent of Citibank (and no such consent shall be implied from any action, inaction, course of conduct or acquiescence by Citibank);

and

e. The lifting of the automatic stay for any party other than Citibank, or any party foreclosing or otherwise seeking to enforce any lien or other right such other party may have in and to the Collateral and/or any part of the Collateral.

20. Unless otherwise agreed to in writing by Citibank, the Trustee's right to use Cash Collateral shall expire on the earliest to occur of (each, a "Termination Event"): (a) 5:00 p.m. Central Time on the Maturity Date, unless extended by agreement of Citibank; (b) the occurrence of an Event of Default; or (c) the Court entering a subsequent order terminating the Trustee's authority to use Cash Collateral.

21. **Reservations of Rights.** Subject to and notwithstanding anything to the contrary in this Order:

a. Entry of this Order is without prejudice to any and all rights, remedies and claims that Citibank may have against third parties, and does not bar or limit Citibank from seeking further or additional relief including, *inter alia*, seeking additional adequate protection and seeking to terminate or modify the automatic stay;

b. Citibank reserves any and all rights to object to the entry of any subsequent order that substantially alters the terms and provisions of this Order;

c. No act committed or action taken by Citibank under this Order shall be used, construed, or deemed to hold Citibank to be in control of the Estates, or the governance, management, or operations of the Estates' businesses for any purpose without limitation. Nor will Citibank be held as a "responsible person" or "owner or operator" or a person in "control" with respect to the governance, management or operation of the Estates' businesses (as such terms, or any similar terms, or any similar terms, are used in the Internal Revenue Code, Compensation and Liability Act, Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon Citibank under this Order including, *inter alia*, such rights and remedies as may be exercisable by Citibank in connection with this Order.

22. **Binding Effect of Order.**  Subject to all reservation of rights in this Order, the provisions of this Order shall inure to the benefit of and shall be binding upon the Trustee and Citibank and their respective successors and assigns, including any trustee, agent, administrator or other fiduciary hereafter appointed as legal representative of the Estates, or with respect to property of the Estates, whether under chapter 11 of the Bankruptcy Code or any subsequent chapter 7 case, and shall also be binding upon all creditors of the Estates and all other parties in interest, except as expressly set forth herein.

23. **Subsequent Modification of Order.**  If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Estates and/or Trustee to Citibank from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

24. To the extent any findings of fact may constitute conclusions of law, and *vice versa*, they are hereby deemed as such.

25. Nothing in this Order should be construed to imply that Citibank agrees to any use of Cash Collateral beyond the Interim Period and/or beyond the terms set forth herein.  Moreover, notwithstanding anything in the Budget or this Interim Order to the contrary, Citibank reserves all rights to object to any motion, application, or other request for relief that relates to the items referred to or covered by the Budget.  Citibank also expressly reserves the right to (i) request additional adequate protection for the Trustee's use of Cash Collateral or otherwise and (ii) object to any further extension of the Trustee's use of Cash Collateral beyond the Interim Period and to request additional adequate protection in accordance with applicable law

26. **<u>Final Cash Collateral Hearing</u>:** A final hearing on the Motion shall be held before this Court on _____, 2016, at __:___ _.m.

### END OF ORDER ###

## Exhibit A

## [BUDGET]